David W. Sanford, DC Bar No. 457933 (*Pro Hac Vice*)
Thomas J. Henderson, DC Bar No. 476854 (*Pro Hac Vice)*
Katherine E. Lamm, NY Bar No. 4912507 (*Pro Hac Vice*)
Kyle Chadwick, DC Bar No. 453003 (*Pro Hac Vice*)
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Ave., NW, Suite 300
Washington, D.C.  20009
Telephone: (202) 499-5201
Facsimile:  (202) 742-5199

Steven L. Wittels, NY Bar No. 2004635 (*Pro Hac Vice*)
Jeremy Heisler, NY Bar No. 1653484 (*Pro Hac Vice*)
Deborah Marcuse, CT Bar No. 429294 (*Pro Hac Vice*)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, Suite 3100
New York, NY  10019
Telephone:  (646) 402-5650
Facsimile:  (646) 402-5651

Janette Wipper, CA Bar No. 275264
Felicia Medina, CA Bar No. 185757
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone:  (415) 795-2020
Facsimile:  (415) 795-2021

Edward D. Chapin, CA Bar No. 053287
Jill M. Sullivan, CA Bar No. 185757
**OF COUNSEL**
**SANFORD WITTELS & HEISLER, LLP**
550 West "C" Street, Suite 2000
San Diego, CA  92101
Telephone:  (619) 241-4810
Facsimile:  (619) 955-5318

Michael Ram, CA Bar No. 104805
Karl Olson, CA Bar No. 104760
**OF COUNSEL**
**SANFORD WITTELS & HEISLER, LLP**
639 Front Street, Fourth Floor
San Francisco, CA  94111
Telephone:   (415) 433-4949
Facsimile:    (415) 433-7311


*Attorneys for the Plaintiffs and the Plaintiff Classes*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| ERIC STILLER AND JOSEPH MORO, on behalf of themselves individually and all others similarly situated,<br><br>       Plaintiffs,<br><br> vs.<br><br>COSTCO WHOLESALE CORPORATION and DOES 1 through 25, inclusive,<br><br>       Defendants. | Case No.: 09CV2473-AJB(BGS)<br><br>Assigned to Hon. Anthony J. Battaglia<br><br>**FLSA PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANT COSTCO WHOLESALE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Declaration of Thomas J. Henderson and Declaration of Richard Drogin, Ph.D ]*<br><br>Date: August 31, 2012<br>Time: 1:30 p.m.<br>Ctrm.: 12 |

# TABLE OF CONTENTS

I.     INTRODUCTION………………………………………...………………1

II.    COUNTERSTATEMENTS OF THE CASE..……………………………………3

III.   THE COURT SHOULD DENY THE MOTION…………………………….....4

    A.    Rule 56 Standards ……………………………………………...............4

    B.    Costco Owes Deposed Plaintiffs for Unpaid "Overtime Gap Time."…………..4

    C.    Costco Miscalculates the FLSA Credits ………………………………………..5

        1.    Background on FLSA Credits ……………………………………......6

        2.    The Great Weight of Authority Limits Extra-Compensation
              Credits to the Workweeks in Which They Accrued …………………...8

        3.    The Majority Interpretation is Faithful to the FLSA's Text…................11

        4.    Legislative History Also Supports the Majority Rule ……………….....14

        5.    This Court Should Adopt the Majority View and Deny the
              Motion on That Basis…………………………………....…………….....15

IV.    CONCLUSION…………………………………………………....……………...16

i

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                                 **PAGE**

*Adair v. City of Kirkland,*
185 F.3d 1055 (9th Cir. 1999) ……………………………………………..5, 6

*Alexander v. United States,*
32 F.3d 1571 (Fed. Cir. 1994) ………………………………………….9, 10, 11

*Aragon v. Unemployment Comp'n Comm'n,*
149 F.2d 447 (9th Cir. 1945) ………………………………………..…12

*Balint v. Carson City,*
180 F.3d 1047 (9th Cir. 1999) …………………………………………….4

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
450 U.S. 728 (1981) …………………………………………………….6, 12

*Bay Ridge Operating Co. v. Aaron,*
334 U.S. 446 (1948) ……………………………………………...........14

*Bell v. Iowa Turkey Growers Coop.,*
407 F. Supp. 2d 1051 (S.D. Iowa 2006) ………………………………………...9

*Biggs v. Wilson,*
1 F.3d 1537 (9th Cir. 1993) …………………………………………....6, 13

*Bilaris v. Wacker Siltronic Corp.,*
370 F.3d 901 (9th Cir 2004) …………………………………………...6

*Brooklyn Sav. Bank v. O'Neill,*
324 U.S. 697 (1945) …………………………………………..…..6

*Christiansen v. Harris County,*
529 U.S. 576 (2000) …………………………………………..……...9

*Conzo v. City of N.Y.,*
667 F. Supp. 2d 279 (S.D.N.Y. 2009) ……………………….………..8, 10

*Donovan v. Crisostomo,*
689 F.2d 869 (9th Cir. 1982) …………………………………………...5

*Fraser v. Goodale,*
342 F.3d 1032 (9th Cir. 2003) ………………………………………….4

*Gilmer v. Alameda-Contra Costa Transit Dist.*,
No. C08-05186 2011 U.S. Dist. LEXIS 126845 (N.D. Cal. Nov. 2, 2011) ……………2, 4, 5, 8

*Herman v. Fabri-Centers of Am., Inc.*,
308 F.3d 580 (6th Cir. 2002) …………….....………………………………….…...*passim*

*Hesseltine v. Goodyear Tire & Rubber Co.*,
391 F. Supp. 2d 509 (E.D. Tex. 2005) …………………….…………………………….…..9

*Howard v. City of Springfield*,
274 F.3d 1141 (7th Cir. 2001) ……………………………..........6, 8, 12, 13

*Kohlheim v. Glynn County*,
915 F.2d 1473 (11th Cir. 1990) …………………………………………….9, 10, 11

*Lupien v. City of Marlborough*,
387 F.3d 83 (1st Cir. Mass. 2004) ………………………………………………………...9

*Massachusetts v. Morash*,
490 U.S. 107 (1989) ……………………..…………………………………………………12

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ………………………………...………………………………………4

*Monahan v. County of Chesterfield, Va.*,
95 F.3d 1263 (4th Cir. 1996) ……………………………………………………………12

*Moss v. Hawaiian Dredging Co.*,
187 F.2d 442 (9th Cir. 1951) ……………………………………………….........7, 14

*Murphy v. Town of Natick*,
516 F. Supp. 2d 153 (D. Mass. 2007) ………………………………………………...9

*Nolan v. City of Chicago*,
125 F. Supp. 2d 324 (N.D. Ill. 2000) ……………………...……………………………9

*O'Brien v. Town of Agawam*,
491 F. Supp. 2d 170 (D. Mass. 2007) ……………………...……………………………9

*Reich v. Southern N.E. Telecom. Corp.*,
892 F. Supp. 389 (D. Conn. 1995) …………………………………………………...9

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) …………………………………………..…………………………11

*Roland Elec. Co. v. Black*,
163 F.2d 417 (4th Cir. 1947) ……………………...………………………………………12

*Rudy v. City of Lowell*,
777 F. Supp. 2d 255 (D. Mass. 2011) …………...………...…………………………2, 8, 12, 13

*Salyer v. Ohio Bureau of Workers' Comp'n*,
83 F.3d 784 (6th Cir. 1996) …………………………………………………………12

*Scott v. City of N.Y.*,
592 F. Supp. 2d 475 (S.D.N.Y. 2008) ………………………………….……..…8, 12

*Singer v. City of Waco*,
324 F.3d 813 (5th Cir. 2003) ………………………………………...…..6, 9, 10, 11

*Skidmore v. Swift & Co.*,
327 U.S. 134 (1944) …………………………………...…………………………..9

*Stewart v. Ragland*,
934 F.2d 1033 (9th Cir. 1991) …………………………………………………15

*United States v. Smith*,
389 F.3d 944 (9th Cir. 2004) …………………………………………………4

*Walling v. Youngerman-Reynolds Hardwood Co.*,
325 U.S. 419 (1945) …………………………………………………………14

*Wren v. RGIS Inventory Specialists*,
256 F.R.D. 180 (N.D. Cal. 2009) …………………………...…………………4

**STATUTES & REGULATIONS**                                         **PAGE**

29 C.F.R. § 778…………………………………………………....5, 6, 9, 13

29 U.S.C. § 206…………………………………………………….…..6, 13

29 U.S.C § 207……………………………………………………....…*passim*

Pub. L. No. 81-393…………………………………………………14

Pub. L. No. 177……………………………………………….……...14

**RULES**                                                              **PAGE**

Fed. R. Civ. P. 54……………………………………………………4

Fed. R. Civ. P. 56……………………………………………………4

**OTHER AUTHORITIES**                                            **PAGE**

DOL W-H Opinion Letter 526 (Dec. 23, 1985) …………………………...……9

iv

# I.    INTRODUCTION

Costco fails to show it is entitled to partial summary judgment against the 1,718 Plaintiffs who seek overtime pay under the Fair Labor Standards Act ("FLSA") for time spent waiting to be let out of Costco premises after closing shifts. Costco's motion (Doc. No. 157) does not satisfy Federal Rule of Civil Procedure 56 because it rests on miscalculations. Genuine disputes of material fact persist because Costco uses erroneous methods to compute both its overtime liabilities and statutory credits. The Court should deny the motion in full.

First, Costco understates the amounts it may owe to Plaintiffs by omitting "overtime gap time"—hours of unpaid work, up to a total of 40 hours, in weeks for which a Plaintiff is owed overtime for working more than 40 hours. Unpaid gap time is an integral part of the overtime violation in these circumstances, and an award of regular pay for overtime gap hours is integral to the remedy.

Further, Costco miscalculates the FLSA credits by using an aggregate method— deducting *all* of the net premium-rate payments it made to each Plaintiff during the entire damages period from the overtime pay that Costco may owe to that Plaintiff in this case.[1] The aggregate or cumulative method has been adopted by only a small minority of the courts that have examined it. A majority of those courts—including the Sixth and Seventh Circuits and district courts in five other jurisdictions—as well as the Department of Labor say that employers can use FLSA credits only to offset overtime liabilities for the same workweeks. The text, purposes, legislative history, and administrative interpretation of the FLSA all support the majority rule over Costco's approach. Allowing employers to stockpile FLSA credits to offset overtime liabilities incurred at distant times contravenes the FLSA's express goal of ensuring that workers receive prompt and correct payment for each workweek.

---

[1] Costco posits the alleged *maximum* amounts that it could owe to each of the 37 Deposed Plaintiffs, based on each Plaintiff's deposition testimony about how often and how long they were delayed by lockdowns, and their highest hourly wage rates. *See* Def.'s Mem. at 6-7, 10-11 (Doc. No. 157-1).

This Court, per Judge Huff, adopted the minority, aggregate method of applying FLSA credits to particular individuals in this case in November 2010 (Doc. No. 92). The Court should take the present opportunity to correct the November 2010 ruling, because (1) the question presented is purely legal; (2) the Court's prior ruling is reversible error (as shown below, the Court cited three appellate decisions whose holdings do not support this Court's result); (3) the issue will affect the claims of hundreds of Plaintiffs, not only the Deposed Plaintiffs; and (4) the weight of persuasive authority on this issue has grown further in Plaintiffs' favor since the November 2010 ruling. *See Gilmer v. Alameda-Contra Costa Transit Dist.*, No. C08-05186 2011 U.S. Dist. LEXIS 126845, *36 (N.D. Cal. Nov. 2, 2011) ("[FLSA o]ffsets must be calculated on a weekly basis and may not be aggregated over the entire period of the suit."); *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 262 (D. Mass. 2011) ("[T]he plaintiffs' damages for unpaid overtime should be calculated on a workweek basis and any offsets pursuant to § 207(h)(2) should be attributed only to the singular workweeks in which both premiums and overtime were earned.").

Plaintiffs' damages expert, Richard Drogin, shows that if one starts with Costco's hypothetical maximum damages for each of the 37 Deposed Plaintiffs and correctly applies the FLSA credits only when, and to the extent, there are overtime liabilities to offset in the same workweeks, Costco's net liabilities increase substantially over its own calculations, and only two Deposed Plaintiffs have no net claims. Dr. Drogin also shows that if the Deposed Plaintiffs' damages are calculated using certain reasonable estimates of the amount of waiting time they endured, and the FLSA credits are properly applied, Costco has liabilities to all but two Deposed Plaintiffs and substantial liability to several.

The Court need not and should not make definitive rulings at this time as to any Plaintiff's damages. The Court should, instead, deny Costco's motion in substantial part[2] on the

---

[2] Plaintiffs do not contest Costco's statute-of-limitations defense against Plaintiff Jiennette Jackson. *See* Def.'s Mem. at 17.

grounds that methodological errors prevent Costco from showing the absence of genuine disputes of material fact.

## II.    COUNTERSTATEMENTS OF THE CASE

Costco's memorandum (Doc. No. 157-1) contains two subtle but genuine misstatements of fact. Neither is material to the ostensible subject of the motion—FLSA credits—but Plaintiffs respond to the misstatements here out of an abundance of caution.

*First*, Costco errs in saying that the Plaintiffs base their FLSA Claims on a narrowly defined "'till-pull policy.'" Def.'s Mem. at 3 (quoting nothing). The term "till-pull" does not appear in Plaintiffs' complaint (Doc No. 96-1), or in their 2010 class-certification motion (Doc. No. 95), memorandum (Doc. No. 95-1), or reply (Doc. No. 102).

Instead, Plaintiffs have consistently traced their lost wages to Costco's centralized policy of *confining employees in warehouses after closing*—the "Lockdown Policy." *See* Pls.' Mem. ISO Class Cert. at 5-8 (Doc. No. 95-1). Consistent with this, the notice sent to potential FLSA Plaintiffs in March 2011 described the FLSA claims as arising "because managers 'locked down' warehouses during cash register and jewelry pulls." (Doc. No. 112-2.) Because the 'lockdown' continued from the closing until all employees left the warehouse, Plaintiffs whose shifts ended after the register and jewelry pulls *ended* also were held in lockdowns without pay. Their managers, due to other closing tasks, did not promptly perform security checks and unlock the door to permit those employees to leave.[3] Although those Plaintiffs were not, strictly speaking, delayed on those nights by "till pulls," they were delayed without pay as a direct result of Costco's Lockdown Policy and are owed compensation for that time.

*Second*, Costco exaggerates in claiming that the Deposed Plaintiffs "gave highly individualized accounts of alleged delays." Def.'s Mem. at 5. Indeed, even the transcript excerpts filed by Costco reveal that the testimony was fundamentally consistent: All of the

---

[3]  *See, e.g.,* Henderson Dec. at ¶ 2, Chesney Dep. 52:23-54:13; McNamara Dep. 76:9-24; Cunningham Dep. 79:15-80:24; Peterson Dep. 13:1-14:21; Schweitzer Dep. 102:18-103:15.

deponents experienced the *same* Lockdown Policy (which Costco denies even *existed*) at the *same* general times of night and for times within the *same* relatively narrow range. Differences in the amounts of unpaid overtime Plaintiffs worked—*i.e.* differences in their *damages*—result from a variety of factors affecting the lockdowns. Such variations in damages have no bearing on this motion, or on Costco's pending decertification motion (Doc. No. 146). *See*, *e.g.*, *Gilmer*, 2011 U.S. Dist. LEXIS 126845 at *16 ("The differences that [defendant] has identified simply relate to damages. Variations in damages awards do not justify decertification of this collective action."); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 213 (N.D. Cal. 2009) (denying motion to decertify FLSA collective action for donning claims, given evidence of common employer policy and common defenses).

## III.     THE COURT SHOULD DENY THE MOTION

### A.     Rule 56 Standards

Costco, as the movant, bears the burden to show that it is entitled to partial judgment as a matter of law and that "there is [no] genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc); *see* Fed. R. Civ. P. 56(c). The parties may rely only on evidence whose contents would be admissible at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). The Court must construe all facts supported by the record in the light most favorable to Plaintiffs, the nonmovants. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not bound by the prior ruling concerning the timing of FLSA credits, as "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment." *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004); *see* Fed. R. Civ. P. 54(b).

### B.     Costco Owes Deposed Plaintiffs for Unpaid "Overtime Gap Time."

The first problem with Costco's calculations of its net liabilities to the 37 Deposed Plaintiffs is that Costco underestimates what it owes those Plaintiffs by omitting compensable

"overtime gap time."[4]  When an employee works more than 40 hours in a week, but is paid for fewer than 40 hours, the employee can recover, in an FLSA action, the unpaid straight-time pay up to 40 hours (the "gap time") as well as the unpaid overtime pay. *See Donovan v. Crisostomo*, 689 F.2d 869, 876 n.14 (9th Cir. 1982) (citing 29 C.F.R. § 778.315 ("[E]xtra compensation for the excess hours of overtime work . . . cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours . .  has been paid.")); *see also Gilmer*, 2011 U.S. Dist. LEXIS 126845 at *39 (citing *Donovan* and awarding "unpaid travel time at the straight time rate of pay, incurred before [plaintiffs] have worked forty hours, in those weeks when they are owed overtime damages for travel time . . . in a work week in excess of forty hours").[5]

Plaintiffs' expert, Dr. Drogin, has corrected Costco's overtime-gap-time error with respect to the 37 Deposed Plaintiffs.[6]  The resulting damages estimates are not directly comparable to the estimates of Costco's declarant, Ed Hong: The two models cover different claim periods and assume different amounts of unpaid work, among other differences.[7]  But Costco bears the burden to show the absence of material disputes of fact, and it cannot do so with respect to its liabilities to the Deposed Plaintiffs, due to this methodological error.

### C.  Costco Miscalculates the FLSA Credits.

Whereas the overtime-gap-time error affects only Costco's calculations of liabilities to the 37 Deposed Plaintiffs"—the only Plaintiffs for whom it calculated damages— Costco's use

---

[4]  As defined, the columns in Ed Hong's damages table exclude overtime gap time. *See* Hong Decl. ¶ 15 and Exh. 1 (Doc. No. 157-5 at 465-66, 469).

[5]  *Cf. Adair*, 185 F.3d at 1062 & n.6 (defining "pure gap time"—unpaid straight time for weeks when the employee was paid at least minimum wage and worked *no* overtime—and noting "it is not clear" that the FLSA permits recovery for pure gap time).

[6]  *See* Drogin Dec. at ¶ 7,  Exh. 1, Table 2, column D.

[7]  *See id*. at 3 n.8.

of the erroneous FLSA credit methodology infects its credit calculations for all 1,718 FLSA Plaintiffs.

## 1.    Background on FLSA Credits

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999). Central to the Act is the requirement to pay covered hourly employees "at a rate not less than one and one-half the [employee's] regular rate" for hours worked over 40 per week. 29 U.S.C. § 207(a)(1). Further, courts have endorsed the Department of Labor's interpretive regulation stating the "general rule . . . that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends," or as soon as practicable thereafter. 29 C.F.R. § 778.106; *see, e.g., Singer v. City of Waco*, 324 F.3d 813, 828 (5th Cir. 2003) (quoting § 778.106); *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 589 (6th Cir. 2002) (same); *Howard v. City of Springfield*, 274 F.3d 1141, 1145 (7th Cir. 2001) (same); *see also Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 704, 709 n.20 (1945) ("The necessity of prompt payment to workers of wages has long been recognized by Congress as well as state legislatures."); *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993) (holding that late payment violated minimum wage requirement of 29 U.S.C. § 206(a)).

Costco's motion invokes the FLSA's "credits" provision: "Extra compensation paid as described in paragraphs (5), (6) and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section." *Id*. § 207(h)(2). As relevant here, creditable extra compensation includes (1) premium pay for hours worked in excess of an ordinary workday or workweek, *see id*. § 207(e)(5), and (2) premium pay at at least 1.5 times "the rate established in good faith for like work performed in nonovertime hours on other days," for hours worked on "Sundays, holidays, or regular days of rest or on the sixth or seventh day of the workweek." *See id*. § 207(e)(6); *see also Bilaris v. Wacker Siltronic Corp.*,

370 F.3d 901, 914 n.19 (9th Cir 2004) (dictum explaining credits).[8] Allowing employers to offset overtime liabilities with other forms of extra compensation avoids the perceived problem of "overtime on overtime," *i.e.,* two types of premium pay for the same hours. *See Moss v. Hawaiian Dredging Co*., 187 F.2d 442, 443 (9th Cir. 1951).

Costco purports to calculate its FLSA credits against its potential liabilities to every FLSA Plaintiff. Costco claims as credits (1) *all* extra compensation *cumulatively* paid to a Plaintiff during the Claim Period that allegedly qualifies as "creditable" under 29 U.S.C. § 207(e)(5)-(7), *minus* (2) *all* of the overtime pay that Costco admittedly owed the Plaintiff under the FLSA for the same period.[9] When—as is the case for 29 of the 37 Deposed Plaintiffs—the difference between those two cumulative totals allegedly exceeds the amount that Costco posits as its maximum potential liability to a Plaintiff in this case, Costco asserts it has no liability to that Plaintiff. When Costco's potential liabilities exceed the credits Costco has calculated, or—as is true for the 1,681 Non-Deposed FLSA Plaintiffs—Costco does not know its potential liabilities, Costco asks the Court to rule only that it is entitled to the credits it has calculated. *See* Def.'s Mem. at 1-2, 8-16.

---

[8] Plaintiffs do not dispute that the types of premium pay that Costco pays and identifies as creditable are creditable. *See* Def.'s Mem. at 8-9.

[9] *See* Def.'s Mem. at 10 & n.22; Hong Decl. ¶ 16 (Doc. No. 157-5 at 466). For a simple example, consider a four-week damages period. An employee works one hour of unpaid FLSA overtime in each of the first three weeks, then works no overtime in the fourth week, but receives the equivalent of three hours of overtime pay for working long days and Sunday in week four. Using Costco's method, the three creditable hours of premium pay in the final week entirely offset the employer's liabilities for the preceding weeks. Using the majority method, there would be no offset against the liability in week four from the first three weeks.

## 2. The Great Weight of Authority Limits Extra-Compensation Credits to the Workweeks in Which They Accrued.

A solid and growing majority of authorities reject the practice of aggregation of FLSA credits across work periods. The Sixth and Seventh Circuits, federal district courts in five other jurisdictions, and the Labor Department, which enforces the FLSA,[10] have all concluded instead that employers may credit extra compensation against overtime liabilities only if the extra compensation and the liability are for the same workweek. *See Fabri-Centers*, 308 F.3d at 589-92 ("[P]remium credits allowed by § 207(h)(2) should be limited to the same workweek or work period in which these premiums were paid.")[11]; *Howard*, 274 F.3d at 1148-49 ("[P]remium pay credits should only offset overtime liabilities that accrued in the same period."); *Rudy*, 777 F. Supp. 2d at 262; *Gilmer*, 2011 U.S. Dist. LEXIS 126845 at *36; *Conzo v. City of N.Y.*, 667 F. Supp. 2d 279, 291 (S.D.N.Y. 2009); *Scott v. City of N.Y.*, 592 F. Supp. 2d

---

[10]    Plaintiffs also have obtained an expert opinion from former United States Department of Labor, Wage and Hour Division Compliance Officer and Assistant District Director Brian Farrington on whether, according to the standards applied by the U.S. Department of Labor, Wage and Hour Division ("USDOL/WH"), overtime premiums paid to employees such as plaintiffs in some workweeks, which may have been more than the amount of overtime compensation required by the FLSA, may be credited against FLSA overtime due in other workweeks.  Mr. Farrington's analysis and conclusions regarding the position that the Wage and Hour Division would take is set forth in his report, Henderson Decl. at ¶3, Exhibit 8, at pp. 31-35.  Mr. Farringdon concludes, at p. 36, that,

> if USDOL/WH found that defendant had paid overtime compensation which qualified for exclusion from the regular rate of pay under Sections 7(e)(5) – (7), and for credit against statutory overtime due under Section 7(h), the agency would only allow such credit in the workweeks in which the 7(e)(5) – (7) overtime was worked.

[11] The Secretary of Labor was the plaintiff in *Fabri-Centers* and advocated successfully for the workweek-by-workweek method.

475, 485 (S.D.N.Y. 2008); *Bell v. Iowa Turkey Growers Coop.*, 407 F. Supp. 2d 1051, 1063 (S.D. Iowa 2006); *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 332 (N.D. Ill. 2000); *Reich v. Southern N.E. Telecom. Corp.*, 892 F. Supp. 389, 405 (D. Conn. 1995), *aff'd* (issue not appealed), 121 F.3d 58 (2d Cir. 1997); DOL W-H Opinion Letter 526, 1985 WL 304329 (Dec. 23, 1985) ("[S]urplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of FLSA, [29 U.S.C. § 207(h),] may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods."); *see also* 29 C.F.R. § 778.202(c) (example in which employer can credit "extra . . . payments . . . for daily overtime hours against the overtime compensation . . . due . . . for hours in excess of 40 *in that workweek*.") (emphasis added); *id.* § 778.601 (describing special circumstances when employers may use 14-day period in lieu of workweek).[12]

By contrast, *no federal circuit court* has endorsed applying FLSA credits cumulatively throughout the period of overtime liability, and only a handful of district courts, including two in Massachusetts, have read the statute in that manner.[13] Three appellate decisions that have been erroneously cited as supporting the aggregate method—*Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003), *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir. 1990); and *Alexander*

---

[12] 29 C.F.R Part 778 is an "interpretative bulletin." *See* 29 C.F.R. § 778.1. The statutory interpretations therein "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 327 U.S. 134 (1944); *see also Christiansen v. Harris County*, 529 U.S. 576, 587 (2000).

[13] *See Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 161 (D. Mass. 2007) (citing *O'Brien v. Town of Agawam*, 491 F. Supp. 2d 170 (D. Mass. 2007)); *O'Brien*, 491 F. Supp. 2d at 176 (allowing cumulative credits "based on the equitable principles articulated in" *Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004) (affirming cumulative credit method for comp-time claims and noting it was "not a case in which the employer forced employees to work overtime for free")); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 523 (E.D. Tex. 2005); Doc. No. 92 at 12.

*v. United States*, 32 F.3d 1571 (Fed. Cir. 1994), all of which the Court cited in the November 2010 decision[14]—do not, in fact, endorse that mistaken reading of the Act.

In *Singer*, the Fifth Circuit plainly stated that "[29 U.S.C.] § 207(h) does not apply in this case." 324 F.3d at 827. The firefighter-plaintiffs in *Singer* were on a 14-day work period, pursuant to 29 U.S.C. § 207(k). The relevant issue was how to calculate their regular rates for work periods in which they worked different numbers of hours (120 hours or 96 hours) per 14 days. *Singer* did not involve any creditable extra compensation listed in 29 U.S.C. § 207(e). *See* 324 F.3d at 827-28 ("The [district] court did not treat the overpayments as 'overtime premiums.' Therefore, § 207(h), and the cases interpreting it, are inapplicable.").

Nor did the issue of aggregating FLSA credits arise in *Kohlheim*. The only credits-related issue the Eleventh Circuit resolved in *Kohlheim* was whether certain overtime payments were creditable *vel non*. The defendant county had paid the plaintiffs, emergency personnel, for overtime at 1.5 times an "artificial hourly rate" known as the "2928 rate." 915 F.2d at 1481 & n.39. In some work periods, the 2928 rate was higher than the employees' regular rate, and in others, it was lower. The district court allowed the county to credit its overtime payments against its overtime liabilities; but the county read the district court's order as denying FLSA credits for periods in which the 2928 rate was lower than the regular rate (and thus, the overtime rate was less than 1.5 times the regular rate). *See id*. It was in this context that the appellate court said "that the county should be allowed to set-off *all* previously paid overtime premiums, not just those equal to or greater than 1 1/2 times the regular rate." *Id*. (emphasis added). The court was addressing *which* overtime payments were creditable—"all" of them, regardless of amount—*not* whether the credits should be *applied* on a work-period or an aggregate basis.[15]

_____

[14]   *See* Order Granting Mot. for PSJ in Part at 6 (Doc. No. 92); s*ee also, e.g., Conzo*, 667 F. Supp. 2d at 290 (discussing *Singer*, *Kohlheim*, and *Alexander*).

[15]   Plaintiffs noted in their October 2010 opposition to Costco's precertification motion for partial summary judgment that "[i]t is not even clear, in fact, that the *Kohlheim* court

Similarly, in *Alexander*—which Costco cited in support of partial summary judgment in 2010[16]—the issue was whether the government had properly paid border patrol officers "at the rate of one and one-half times [their] regular rate[s] of pay for all hours of overtime worked *during a given pay period*." *Id*. at 1576 (emphasis added). The parties disputed whether a specific kind of premium pay was creditable against overtime liability—*not* whether extra compensation could be credited against liabilities in *other* pay periods. *See id*. at 1575-76 ("The agency's approach is best understood through an example. Assume that, *during a given pay period*, an employee works 80 hours at a basic rate of $12.58 performing border patrol duties. . . .") (emphasis added). Some readers of *Alexander* have misinterpreted out of context the Federal Circuit's use of the word "any" in holding that extra pay described in 29 U.S.C. § 207(e)(5) or (6) "is creditable toward any overtime compensation due under the FLSA." 32 F.3d at 1579; *see, e.g.*, *Fabri-Centers*, 308 F.3d at 390 (quoting *Alexander*). But the timing issue presented in this case simply was not before the *Singer*, *Kohlheim*, or *Alexander* courts.

In sum, a solid majority of courts that have analyzed the issue—a—as well as the Labor Department read the FLSA as permitting employers to take credits only for the workweeks in which the credits accrued.

### 3. The Majority Interpretation Is Faithful to the FLSA's Text.

The majority rule on the timing of FLSA credits is correct. The "first step" in assessing whether the statute permits employers to stockpile extra-compensation credits across work periods is to determine whether the Act's plain meaning resolves the issue. *See, e.g.*, *Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997). Judge Huff ruled in this case that the plain meaning supports Costco's position. *See* Order Granting Mot. for PSJ in Part at 6. "Because there is no *prohibition* in the statute against crediting premium payments across work periods, and in fact,

---

considered the issue of the timing of the credits." Pls.' Opp. to Mot. for PSJ at 14 (Doc. No. 84). On further review, it is clear the court did not.

[16] *See* Doc No. 78-1 at 11.

the statute permits employers to offset premium payments against unpaid overtime," the Court reasoned, "it cannot be a violation of the FLSA to do so." *Id.* (emphasis added).

As other courts have recognized, however, the FLSA's mere silence on the timing issue should not be construed as permitting employers their choice of crediting methods. It is well settled that the FLSA is a remedial statute "designed to protect workers from the twin evils of excessive work hours and substandard wages." *Howard*, 274 F.3d at 1148 (citing *Barrentine*, 450 U.S. at 739; *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1267 (4th Cir. 1996)). It must be construed broadly in favor of employees' rights, and its exceptions construed narrowly. *See, e.g.*, *Aragon v. Unemployment Comp'n Comm'n*, 149 F.2d 447, 449 (9th Cir. 1945); *Salyer v. Ohio Bureau of Workers' Comp'n*, 83 F.3d 784, 786 (6th Cir. 1996). Therefore, one must construe the pro-employer credit provisions "in the context of the statute as a whole." *Howard*, 274 F.3d at 1145; *see also Fabri-Centers*, 308 F.3d at 589; *see generally Massachusetts v. Morash*, 490 U.S. 107, 115 (1989) (a court interpreting a statute must "look to the provisions of the whole law, and to its object and policy").

Courts have long recognized that "the [FLSA] takes as its standard a single workweek consisting of seven consecutive days." *Roland Elec. Co. v. Black*, 163 F.2d 417, 421 (4th Cir. 1947); *see also Rudy*, 777 F. Supp. 2d at 260 ("The FLSA overtime requirement uses a single workweek as its basic unit of measurement.") (citing *Scott*, 592 F. Supp. 2d at 484). Indeed, 29 U.S.C. § 207 mentions a "workweek" no fewer than 34 times, and every duration mentioned is either a workday or a workweek.[17] In this statutory context, amidst the steady drumbeat of

_____

[17] *See, e.g.*, 29 U.S.C. §207(a) (setting 40-hour workweek), -(b) (exceptions to 40-hour workweek, -(f) (allowing irregular workweeks pursuant to certain qualifying agreements), -(g) (defining regular workweek and overtime under piecework agreements), -(i) (defining exemption from 40-hour workweek for retail and service employees), -(j) (same for health-care employees), -(k) (defining regular workweek for firefighters and law enforcement personnel), -(l) (stating that 40-hour subsection (a) workweek applies to domestic service employees), -(m) (special overtime provisions for certain tobacco industry workers for "a period or periods of not

"workweek" in 29 U.S.C. § 207, the statement that certain extra compensation "shall be creditable toward *overtime compensation payable* pursuant to this section," 29 U.S.C. § 207(h)(2) (emphasis added), refers to using extra compensation paid for a *workweek*, to offset overtime liabilities "payable" for that *same* week. The single-workweek reading also honors the ordinary meaning of "payable," which refers to amounts that are already owed—not to *future* liabilities. *See Fabri-Centers*, 308 F.3d at 588 (quoting Black's Law Dictionary 1128 (6th ed. 1990)). The "payable" amount of overtime compensation, against which an employer may claim extra-compensation credits, is the overtime compensation the employer *owes* for the same week in which it paid the creditable extra compensation. *See id.*

The majority reading of the credits provision also promotes the FLSA's broader policy aim of ensuring prompt payment of wages due. *See Biggs*, 1 F.3d at 1539 (holding that late payment violates minimum wage requirement of 29 U.S.C. § 206(a)); *Howard*, 274 F.3d at 1145 (citing cases); *see also* 29 C.F.R. § 778.104 (for purposes of determining fair compensation, "each workweek stands alone"); *id.* § -.106 (employers must pay overtime wages promptly). By contrast, reading section 207(h)(2) as allowing employers to stockpile FLSA credits over multiple workweeks—or *years*, as Costco proposes—would disserve the goal of prompt payment by allowing employers "to pay [their] overtime obligations [in credits] at a time far removed from when [they were] due." *Howard*, 274 F.3d at 1148, *quoted in Fabri-Centers*, 308 F.3d at 591; *see also Rudy*, 777 F. Supp. 2d at 262 ("[I]f the City had correctly calculated its overtime rate and applied the § 207(h)(2) offsets contemporaneously, it would not have been able to apply those offsets to obligations incurred one or two years later."). For all of these reasons, the single-workweek reading of the credit provisions is consistent with FLSA's text and structure, while the minority reading is not.

---

more than fourteen workweeks in the aggregate in any calendar year"), -(q) (exemption from overtime "for a period or periods of not more than 10 hours in the aggregate in any workweek in excess of the maximum workweek" for remedial education).

### 4. Legislative History Also Supports the Majority Rule.

Legislative history also supports the workweek-by-workweek method. As noted, Congress enacted the FLSA in 1938 in part to encourage companies to employ more hourly workers, for fewer weekly hours per worker. *See Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 423-24 (1945). Congress passed the FLSA's credit provisions in 1949, in direct response to *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948). *See Moss*, 187 F.2d at 443; *Fabri-Centers*, 308 F.3d at 587. The Supreme Court had held in *Bay Ridge* that premium pay rates under a longshoremen's union contract for undesirable shifts (which the contract called "overtime" rates) were not actually overtime rates under the FLSA, and thus had to be included in the employees' regular rates for purposes of computing their overtime rates (as 1.5 times their regular rates). 334 U.S. at 466-70. The effect of *Bay Ridge* was to increase the statutory overtime pay owed to workers who earned contractual "overtime" pay and FLSA overtime pay *in the same week*. *See id.* at 476-77; *Fabri-Centers*, 308 F.3d at 587.

Congress targeted that problem—employers owing "overtime on overtime" for particular workweeks—in two steps. Initially, Congress amended 29 U.S.C. § 207(e) to state that "extra compensation [at a defined] premium rate . . . may be credited toward any premium compensation due [an employee] under this section for overtime work." Pub. L. No. 177, 63 Stat. 446, 446 (1949). A few months later, Congress amended the Act again. This amendment, "popularly known as the Overtime-on-Overtime Act," *Moss*, 187 F.2d at 444, changed "toward any premium compensation due . . . for overtime" to "toward overtime compensation payable," and created a new subsection for the current language of section 207(h)(2): "Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (d) shall be creditable toward overtime compensation payable pursuant to this section." Pub. L. No. 81-393, § 7, 63 Stat. 910, 915 (1949).

The galvanizing holding of *Bay Ridge*, Congress's reactions to it, and the fact that the legislation creating the current credit provisions was dubbed the "Overtime-on-Overtime Act" all indicate that Congress intended to fix the particular problem of overlapping premium time in the same pay periods. There is no reason to think that Congress intended to allow employers to

stockpile credits for compensation paid to a worker over a period of months or years, to offset or escape liability in future overtime litigation. Thus, the FLSA's legislative history—like the Act's text, structure, and prompt-payment requirements—indicates that employers like Costco should be permitted to offset overtime liabilities only with credits accrued for the same week.[18]

### 5. This Court Should Adopt the Majority View and Deny the Motion on That Basis.

As Costco has once more brought the issue of FLSA credits before the Court, the Court may correct the November 2010 legal ruling that allowed Costco to aggregate credits to offset its FLSA liabilities to former Named Plaintiffs and current Named Plaintiff Eric Stiller. (Doc. No. 92.) The Court can join the solid and growing (in 2011) majority of courts that agree with the Labor Department's credit methodology. Doing so will not disrupt the case or unduly prejudice Costco. The question of the timing of FLSA credits is purely legal, and Costco possesses all of the data necessary to perform the corrected calculations. At the same time, the credit issue will probably affect the claims of most or all of the opt-in FLSA Plaintiffs.

Plaintiffs' expert, Dr. Drogin, has correctly calculated Costco's FLSA credits against the claims of each of the 37 Deposed Plaintiffs, using the week-by-week method.[19] One can see the dramatic differences in the credit totals by comparing Dr. Drogin's Table 2 to Mr. Hong's Exhibit 1.[20] Whereas Mr. Hong produced credit totals in the multiple thousands of dollars, Dr.

---

[18] The Sixth Circuit, in response to a defendant's argument, also found it significant that in enacting the second credits amendments in 1949, Congress deleted the word "any" from "any premium compensation." *See Fabri-Centers*, 308 F.3d at 588 (citing *Stewart v. Ragland*, 934 F.2d 1033, 1037 n.6 (9th Cir. 1991) ("When legislators delete language, we may assume that they intended to eliminate the effect of the previous wording.")). The court concluded that the deletion of "any" indicated that Congress had in mind a relatively narrow category of creditable extra compensation, *i.e.*, limited to the workweek of the payments. *See id.*

[19] *See* Drogin Dec. at ¶ 7, Table 2, column E.

[20] Doc No. 157-5 at 469.

Drogin finds the credits to be in the hundreds of dollars or less. The Court need not adopt Plaintiffs' credit calculations now. It should simply hold that, due to its methodology, Costco fails to show the absence of genuine disputes of fact regarding the credits it can take against the claims of the Deposed Plaintiffs or other FLSA Plaintiffs.

**IV.    CONCLUSION**

For the reasons given above, the Court should deny the motion for partial summary judgment.

DATED: July 5, 2012

Respectfully submitted,
s/ David W. Sanford
David W. Sanford, DC Bar No. 457933
Thomas J. Henderson, DC Bar No. 476854
Kyle Chadwick, DC Bar No. 453003
Katherine E. Lamm, NY Bar No. 4912507
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Ave., NW, Suite 300
Washington, DC  20009
Telephone:  (202) 742-7780
Facsimile:   (202) 742-7776

Steven Wittels, NY Bar No. 2004635
Jeremy Heisler, NY Bar No. 1653484
Deborah Marcuse, CT Bar No. 429294
**SANFORD, WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, Suite 3100
New York, NY  10019
Telephone:  (646) 723-2947
Facsimile:   (646) 723-2948

Janette Wipper, CA Bar No. 275264
Felicia Medina, CA Bar No. 185757
**SANFORD, WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone:   (415) 391-6900
Facsimile:    (415) 391-6901

Edward D. Chapin, CA Bar No. 053287
Jill M. Sullivan, CA Bar No. 185757
**OF COUNSEL**
**SANFORD, WITTELS & HEISLER, LLP**
550 West "C" Street, Suite 2000
San Diego, CA  92101

Tel:  (619) 241-4810
Fax:  (619) 955-5318

Michael Ram, CA Bar No. 104805
Karl Olson, CA Bar No. 104760
**OF COUNSEL**
**SANFORD, WITTELS & HEISLER, LLP**
639 Front Street, Fourth Floor
San Francisco, CA  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

*Attorneys for the Plaintiffs and the Plaintiff Class*