UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC STILLER and JOSEPH MORO, on behalf of themselves individually and all other similarly situated,<br><br>Plaintiffs,<br>v.<br>COSTCO WHOLESALE CORPORATION and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:09-cv-2473-GPC-BGS<br><br>**ORDER DENYING COSTCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(ECF NO. 157)** |

In this collective and class-action case, plaintiffs Eric Stiller ("Stiller") and Joseph Moro ("Moro") (together, "Plaintiffs") allege defendant Costco Wholesale Corporation ("Costco") has violated federal and state labor laws through the implementation of closing procedures that result in unpaid off-the-clock ("OTC") time. (ECF No. 96-1, Fourth Amend. Compl. ("4AC").)

In November 2010, prior to this case's transfer to the undersigned judge, the Honorable Marilyn L. Huff, U.S. District Judge, granted Costco's request for summary judgment with regard to the use of "extra compensation" that Costco paid to its employees to offset Costco's potential overtime liability under § 207 of the Fair Labor Standards Act ("FLSA"). (ECF No. 92 at 4-7.) Judge Huff concluded that certain

payments that Costco made to its employees qualified as the type of "extra compensation" that would offset Costco's potential overtime liability under the FLSA. Costco, for example, pays its employees 1.5 times their regular rate for hours worked on Sundays and holidays. In deciding how this extra compensation (i.e., premium credits) should offset Costco's potential overtime liability, Judge Huff adopted the minority approach, which permits an employer to use premium credits, whenever paid, to cumulatively offset any overtime liability, whenever accrued. This is opposed to the majority approach, which requires any credits to be applied in the same workweek or pay period as when the credits were paid.

Thus, under the minority approach, Judge Huff concluded "that the extra compensation paid by Costco to Plaintiffs Carroll, Moncauskas, Moro, Pytelewski, and Vrismo may be credited across work periods to satisfy Costco's alleged FLSA overtime obligations." (ECF No. 92 at 7.) Finding that the extra compensation that Costco paid to these plaintiffs exceeded their potential FLSA overtime claims, Judge Huff dismissed these plaintiffs' FLSA overtime claims against Costco. For the same reasons, Judge Huff limited plaintiff Stiller's potential FLSA recovery to $949.24.

Following Jude Huff's Order, the parties endeavored to take the depositions of forty-eight opt-in plaintiffs. Ultimately, the parties took only thirty-seven depositions. Thereafter, Costco filed the instant motion for partial summary judgment, seeking (1) the dismissal of the FLSA overtime claims of twenty-nine opt-in plaintiffs whose potential FLSA overtime claims are exceeded by the extra compensation that Costco paid them; (2) the limitation of the FLSA overtime claims of eight other opt-in plaintiffs whose potential FLSA overtime claims are not fully offset by the extra compensation that Costco paid them; (3) a declaration that the remaining, un-deposed opt-in plaintiffs' claims are limited by the amounts of extra compensation that Costco paid them; and (4) the dismissal of opt-in plaintiff Jienette Jackson's FLSA claim as time barred. (ECF No. 157.)

Plaintiffs have filed a response in opposition to Costco's Motion for Partial

Summary Judgment, in which they urge the Court to reconsider Judge Huff's adoption of the minority view with regard to applying premium credits. (ECF No. 172.)

Costco has filed a reply in support of its Motion, in which it argues that the time for reconsideration of Judge Huff's Order has passed and that Judge Huff's adoption of the minority view is now the law of the case.

Despite Costco's assertion that the law of the case doctrine prohibits this Court from reconsidering Judge Huff's Order, this Court concludes that it may revisit Judge Huff's prior ruling because this Court has not been divested of jurisdiction over Judge Huff's Order. See United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004) ("The law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction." (citing City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001))).

The Court is not persuaded that Plaintiffs' failure to raise this issue in a timely motion pursuant to Civil Local Rule 7.1.i.2 bars the Court from reconsidering Judge Huff's Order, as both Federal Rule of Civil Procedure 54(b) and this Court's inherent power provide sufficient bases on which to reconsider Judge Huff's Order. See Fed. R. Civ. P. 54(b) ("[A]ny order other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added)); see also United States v. Martin, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) (observing district court's "inherent jurisdiction to modify, alter, or revoke" its own orders before they become final).

The Court further finds that it may revisit Judge Huff's Order because, as set forth in the following paragraphs, this Court is left with a "definite and firm conviction that a mistake has been committed." See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 623 (1993) (internal quotation marks omitted); see also

United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ("A court may have discretion to depart from the law of the case where . . . the first decision was clearly erroneous.")

29 U.S.C. § 207(a) provides that an employer cannot employ any of its employees for a "workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." (Emphasis added.)

An employee's "regular rate" is generally "deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). Several types of payments, however, are excluded from the calculation of an employee's "regular rate," including:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;
>
> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such a premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;
>
> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and on-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. §§ 207(e)(5)-(7).

Section 207 goes on to provide that the payments excluded from the calculation of an employee's "regular rate" under subsection (e) "shall not be creditable toward . . . overtime compensation required under this section." 29 U.S.C. § 207(h)(1). The types of extra compensation described in paragraphs (5), (6), and (7) of subsection (e),

however, are the exception. Id. § 207(h)(2). Payments under these paragraphs are "creditable toward overtime compensation payable pursuant to this section." Id.

Thus, once an employee's "regular rate" is calculated, one may first determine the amount of any unpaid overtime compensation by multiplying the number of unpaid overtime hours by 1.5 times the employee's "regular rate." This amount is the employer's overtime liability.

Once the employer's overtime liability is calculated, one may next determine whether the employer has paid any extra compensation to the employee that could be used to offset the employer's overtime liability. To do this, one must determine whether the employer has paid any of the extra compensation described under paragraphs (5), (6), and/or (7) of subsection (e).[1] If the employer has paid such extra compensation, then the amount of extra compensation should offset the employer's overtime liability.

The next question is how such extra compensation should be applied to any overtime liability. Plaintiffs, two circuit courts, and at least six district courts would permit an employer to offset overtime liability only with the extra compensation that was paid in the same workweek or pay period in which the overtime liability accrued. Defendant, Judge Huff, and three district courts would permit an employer to aggregate all extra compensation it paid to an employee during a particular time frame (e.g., a class period) to cumulatively offset any overtime liability incurred during the same period.

Judge Huff cited three circuit court cases in support of the minority position: Singer v. City of Waco, 324 F.3d 813 (5th Cir. 2003), Alexander v. United States, 32 F.3d 1571 (Fed. Cir. 1994), and Kohlheim v. Glynn County, 915 F.2d 1472 (11 Cir. 1990). None of these cases, however, actually support the minority position.

In Singer v. City of Waco, the employee plaintiffs argued the district court erred

---

[1] The parties do not dispute that the types of extra compensation that Costco pays its employees are creditable under 29 U.S.C. §§ 207(e)(5)-(7).

in offsetting overpayments by the employer defendant in some work periods against the overall damages owed. 324 F.3d 813, 825-28 (5th Cir. 2003). Among other theories, the employees argued the district court's offset was impermissible under 29 U.S.C. § 207(h). Id. at 826-27. The Fifth Circuit rejected this argument, however, finding § 207(h) did not apply because the district court did not use overtime premiums to offset the employees' damages but instead included "overpayments . . . in determining the [plaintiffs]' regular rate of pay." Id. at 827-28. The court did not address how premium credits under § 207(h)(2) should apply.

In Kohlheim v. Glynn County, the Eleventh Circuit held, without elaborating, that, under § 207(h), the employee plaintiffs "should be allowed to set-off all previously paid overtime premiums, not just those equal to or greater than 1 1/2 times the regular rate, against overtime compensation found to be due and owing during the damages phase of the trial." 915 F.2d 1473, 1481 (1990) (emphasis in original). Notwithstanding the court's emphasis on the word "all," the court only addressed whether previously paid overtime premiums were creditable at all. The court did not address whether the premium credits should be applied on a workweek-by-workweek, versus a cumulative, basis.

In Alexander v. United States, the Federal Circuit decided that overtime compensation paid to border patrol agents pursuant to certain statutes constituted the type of extra compensation described in paragraphs (5) and (6) of subsection (e). 32 F.3d 1571, 1575-78 (1994). In reciting the relevant legal rules, the court observed that premium pay is "creditable toward any overtime compensation due under the FLSA." Id. at 1575 (emphasis added). While some courts have read this reference to "any overtime compensation due" as permitting a cumulative application of premium credits, this Court finds that such a reading is unsupported by the remainder of the court's opinion. Simply put, the court did not decide how premium credits should apply; it only decided whether certain payments were creditable.

While the foregoing circuit court cases did not directly address how premium

credits should apply, a few district court cases have considered the question. In <u>Abbey v. City of Jackson</u>, the Eastern District of Michigan held that premium payments for overtime hours may be used to offset all deficiencies in overtime compensation under the FLSA. 883 F. Supp. 181, 186-87 (1995). In reaching this conclusion, however, the court relied on <u>Alexander</u> and <u>Kolheim</u>, which, as noted above, do not actually support this proposition.[2] <u>See also</u> <u>O'Brien v. Town of Agawam</u>, 491 F. Supp. 2d 170, 174-76 (D. Mass. 2007) (concluding employers were entitled to apply premium payment credits to offset overtime liability regardless of when the premiums were paid and when the overtime work occurred); <u>Murphy v. Town of Natick</u>, 516 F. Supp. 2d 153, 160-61 (D. Mass. 2007) (citing <u>O'Brien</u> to conclude premium credits should be applied cumulatively). Thus, in reality, the minority view—that premium credits should apply cumulatively—is supported only by a couple of district court cases in Massachusetts.

Comprising the majority view are at least two circuit court cases and at least six district court cases, which provide that premium credits should apply on a workweek-by-workweek basis. In <u>Howard v. City of Springfield, Illinois</u>, the Seventh Circuit found that allowing an employer to cumulatively offset its overtime liability with creditable premiums without regard to when the overtime liability was incurred or the premiums paid "is contrary to the language and the purpose of [§ 207]." 274 F.3d 1141, 1148 (2001). Observing that the FLSA emphasizes timely overtime payments, the court held that, "[b]ecause the statute contemplates that overtime will be paid and calculated on a pay period basis, it is consistent with that language to calculate and apply credits in the same manner." <u>Id.</u> at 1149. The court noted that, just as an employer may not average the number of hours worked over two weeks to avoid overtime liability, neither may an employer apply credits (whenever paid) to overtime liability (whenever incurred) to accomplish the same result. <u>Id.</u>

In <u>Herman v. Fabri-Centers of America, Inc.</u>, the Secretary of Labor brought suit

---

[2] Moreover, the Sixth Circuit's decision in <u>Herman v. Fabri-Centers of America, Inc.</u>, <u>infra</u>, effectively overruled this district court's conclusion that premium credits should apply cumulatively. 308 F.3d 580, 590 (6th Cir. 2002).

against an employer for violations of the FLSA. 308 F.3d 580 (2002). The Sixth Circuit, in a lengthy analysis, concluded that creditable premiums can only offset overtime liability incurred in the same workweek that the premium credits were paid. Id. at 585-593. To reach this conclusion, the court first found that the plain language of § 207(h) is silent as to when extra compensation credit may be used. Id. at 586. The court thus examined the text of § 207(h) in light of relevant legislative history and in context with the FLSA as a whole, including its implementing regulations. Id.

The Sixth Circuit observed that Congress first enacted the law that would become § 207(h) in response to the Supreme Court's decision in Bay Ridge v. Aaron, 334 U.S. 446 (1948). There, the Supreme Court held that certain contractual premiums should be included in determining an employee's regular rate for purposes of calculating statutory overtime compensation. Fabri-Centers, 308 F.3d at 586-87. The Supreme Court's decision thus resulted in employee's being compensated for "overtime on overtime," which Congress responded to by passing a law that allowed an employer to credit extra compensation "toward any premium compensation due" under the FLSA. Id. Shortly thereafter, Congress amended this provision to delete the word "any," resulting in a statute that allowed employers to apply credits "toward overtime compensation payable pursuant to this section." Id. at 587. The result of this legislative history is reflected in §§ 207(e)(5), (6), and (7)–which exclude certain permit payments from the computation of an employee's regular rate (and thus overtime rate)–while § 207(h) allows these payments to be credited against FLSA overtime liability. Id.

After analyzing § 207(h)'s legislative history, the Sixth Circuit considered the FLSA as a whole and its implementing regulations, finding that both supported the court's conclusion that premium credits can only apply to overtime liability incurred during the workweek in which the premiums were paid. Id. at 589. The court observed that the FLSA as a whole and its implementing regulations "highlight the primacy of the workweek concept" and require prompt payment of overtime compensation. Id.

Several district courts have reached the same conclusion. See Rudy v. City of Lowell, 777 F. Supp. 2d 255, 262 (D. Mass. 2011) (disagreeing with O'Brien and Murphy, supra, and concluding premiums should be applied on a workweek-by-workweek basis); Conzo v. City of New York, 667 F. Supp. 2d 279, 291 (S.D.N.Y. 2009) (concluding that an employer may only credit extra payments against overtime liability accruing in the same workweek); Scott v. City of New York, 592 F. Supp. 2d 475, 485 (S.D.N.Y. 2008) (same); Bell v. Iowa Turkery Growers Co-op, 407 F. Supp. 2d 1051, 1063 (S.D. Iowa 2006) (same); Nolan v. City of Chicago, 135 F. Supp. 2d 324, 333 (N.D. Ill. 2000) (same); Gilmer v. Alameda-Contra Costa Transit Dist., 2011 U.S. Dist. Lexis 126845, at *34-36 (N.D. Cal. Nov. 2, 2011) (same). Thus, the majority approach is supported by two circuit court cases and at least six district court cases.

In a dissent to the Fabri-Centers majority opinion, Circuit Judge Siler opined that, while it is not illogical to conclude that premium credits should be limited to the same work period in which the premiums were paid, employers should not be penalized for computing premium credits in a way that is not prohibited by the FLSA. 308 F.3d at 593. Judge Siler would instead allow employers to calculate credits in any way that the FLSA does not expressly prohibit, placing on Congress or the Department of Labor the responsibility of passing some law or regulation that would clarify this dispute over the application of premium credits. Id.

Indeed, Judge Huff took a similar approach. In adopting the minority view, Judge Huff relied on the Supreme Court's holding in Christensen v. Harris County, in which the Supreme Court recognized that, unless an action is expressly or implicitly prohibited by the FLSA, the Secretary of Labor could not argue that an employer violated the FLSA. 529 U.S. 576, 588 (2000). The specific employer conduct at issue in Christensen involved the employer's policy of forcing employees to use their accrued compensatory time to avoid having to cash out such time at a later date. In concluding that the FLSA did not expressly or implicitly prohibit this type of policy,

the Supreme Court noted that the FLSA provision at issue, § 207(o)(5), merely provides that an employee who asks to use compensatory time must be allowed to do so unless the employer's operations would be unduly disrupted. The Supreme Court then looked to other aspects of the FLSA to find support for its conclusion.

Unlike in Christensen, where the Supreme Court found that the FLSA did not expressly or implicitly prohibit the policy at issue, this Court finds that the FLSA does prohibit the minority approach of applying premium credits to cumulatively offset overtime liability. To that end, this Court adopts the Seventh Circuit's analysis in Howard and the Sixth Circuit's analysis in Fabri-Centers to conclude that the FLSA implicitly prohibits an employer from applying premium credits across workweeks.

Further, while the Ninth Circuit has not yet ruled on this issue directly, this Court finds some indication of how the Ninth Circuit might view this question in Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (2004). There, the Ninth Circuit was tasked with deciding whether an employer could use payments for compensated lunch periods to offset overtime liability. The court first broadly interpreted § 207(e)(2)—which excludes "payments made for occasional periods when no work is performed due to vacation, holiday, illness, [etc.]" from the calculation of an employee's regular rate—to also exclude payments for compensated lunch periods even though, arguably, lunch periods are not "occasional" but are instead regular, usual, or ordinary. Id. at 909. The court then concluded that, under § 207(h)(1), the employer could not use payments for compensated lunch periods to offset any overtime liability because it was not a premium payment as set forth in §§ 207(e)(5)-(7). Finally, the court emphasized that, "[e]ven without [§ 207(h)], . . . it would undermine the purpose of the FLSA if an employer could use agreed-upon compensation for non-work time (or work time) as a credit so as to avoid paying compensation required by the FLSA." Id. at 914 (emphasis added). The Ninth Circuit went so far as to say that such an employer policy "is, instead, false and deceptive 'creative' bookkeeping that, if tolerated, would frustrate the goals and purposes of the FLSA." Id.

It thus appears to this Court that, if presented with the question of how premium credits should be applied under § 207(h)(2), the Ninth Circuit would place considerable weight on the FLSA's goals and purposes as did the Sixth and Seventh Circuits in Fabri-Centers and Howard. Indeed, the Ninth Circuit might again go so far as to say that the application of premium credits across workweeks is yet another type of "'creative' bookkeeping that, if tolerated would frustrate the goals and purposes of the FLSA."

Based on the foregoing, this Court finds that Judge Huff's Order regarding the application of credits under § 207(h) was clear error. Because Costco's Motion for Summary Judgment is premised on the erroneous adoption of the minority view regarding the application of premium credits, this Court must **DENY** Costco's Motion for Summary Judgment as it pertains to the application of premium credits.

As both parties agree that plaintiff Jienette Jackson's submission of her opt-in form was untimely, the Court will **GRANT** Costco's Motion for Summary Judgment as it pertains to dismissing Ms. Jackson's claims. The hearing on Costco's Motion for Summary Judgment, currently set for September 27, 2013, is **VACATED**. Remaining on calendar is Costco's Motion to Decertify.

**IT IS SO ORDERED.**

DATED: September 26, 2013

HON. GONZALO P. CURIEL
United States District Judge