UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC STILLER and JOSEPH MORO, on behalf of themselves individually and all other similarly situated,<br><br>Plaintiffs,<br>v.<br>COSTCO WHOLESALE CORPORATION and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:09-cv-2473-GPC-BGS<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND TO MODIFY CLASS DEFINITION**<br><br>**(ECF NO. 160)** |

In this collective and class-action case, plaintiffs Eric Stiller ("Stiller") and Joseph Moro ("Moro") (together, "Plaintiffs") allege defendant Costco Wholesale Corporation ("Costco") has violated federal and state labor laws through the implementation of closing procedures that result in unpaid off-the-clock ("OTC") time. (ECF No. 96-1, 4th Amend. Compl. ("4AC").)

Before the Court is Plaintiffs' Motion for Leave to File Fifth Amended Complaint and to Modify Class Definition ("Motion for Leave to File 5AC"). (ECF No. 160.) Costco has filed a response in opposition. (ECF No. 166.) Plaintiffs have filed a reply. (ECF No. 169.)

On December 13, 2010, Judge Huff certified an opt-out class of California

1  hourly employees under Federal Rule of Civil Procedure 23(b)(3) ("California Class")
2  and conditionally certified a nationwide opt-in collective action under the Fair Labor
3  Standards Act ("FLSA"). (ECF No. 13.)
4      Plaintiffs' initial Complaint and each subsequent amended complaint, up until
5  Plaintiffs' Third Amended Complaint, defined the California Class as encompassing
6  all hourly, non-exempt, union or non-union employees employed in Costco warehouses
7  in California. (ECF Nos. 1, 34, 72.)
8      On October 4, 2010, Costco filed a motion for partial summary judgment, in
9  which it argued that the "union exemption" found in California Labor Code § 514
10 prevented class members represented by unions from recovering overtime pay under
11 state law. (ECF No. 78.) On November 3, 2010, Judge Huff granted Costco's request
12 for summary judgment on these grounds. (ECF No. 92 at 13-14.)
13     On October 28, 2010—prior to Judge Huff's November 3, 2010
14 Order—Plaintiffs filed a motion for leave to file a fourth amended complaint ("Motion
15 for Leave to File 4AC"). (ECF No. 90.) In their Motion for Leave to File 4AC,
16 Plaintiffs represented that, after considering Costco's request for summary judgment
17 regarding California Labor Code § 514, Plaintiffs wished to "**clarify** that the members
18 of the proposed California Class are, *inter alia*, **non-union members**." (ECF No. 90-1
19 at 3 (emphases in original).) Judge Huff, already having ruled that union members
20 belonging to the California Class were not eligible to receiver overtime pay, granted
21 Plaintiffs' unopposed Motion for Leave to File 4AC on November 10, 2010. (ECF No.
22 94.) Plaintiffs' filed their 4AC on November 16, 2010. (ECF No. 96.) The California
23 Class was, and continues to be, defined as "all persons who worked for Costco
24 Wholesale Corporation in California as hourly, non-exempt, non-union employees who
25 were subject to Costco's lockdown procedures . . . ." (See 4AC ¶ 24.) On December
26 13, 2012, Judge Huff certified this newly defined California Class. (ECF No. 104.)
27     On March 11, 2011, Costco sent notice and opt-out forms to 32,139 persons
28 identified as members of the California Class. During the summer and fall of 2011, the

parties proceeded with discovery, during which both California union and non-union employees were deposed. On November 29, 2011, Costco produced records pertaining to members of the California Class that contained data for both union and non-union employees. Plaintiffs assert that, after reviewing the records and noticing that Costco included information regarding some union employees, Plaintiffs realized they had mistakenly excluded from the California Class union employees eligible to receive straight time. Approximately four months later, on April 4, 2012, Plaintiff filed the instant Motion for Leave to File 5AC. (ECF No. 160.)

## I. Legal Standard

Although neither party raises the issue, the Court observes that the deadline to file a motion to amend pleadings passed on March 5, 2010, and was never extended. (See ECF No. 18.)

Ordinarily, Federal Rule of Civil Procedure 16(b)(4)'s good cause standard governs the modification of a Rule 16 scheduling order, which includes the deadline to seek leave to amend pleadings. This good-cause standard comports with Rule 6(b)(1), which provides: "When an act may or must be done within a specified time, the court may, for good cause, extend time . . . ." Rule 6, however, provides more specificity regarding the timing of a request to extend a deadline.

Rule 6 provides that, if a motion to extend is made after a deadline has expired, the motion to extend may only be granted "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Thus, if a party wishes to seek leave to amend its pleadings after the deadline to do so has passed, the party must demonstrate both good cause for modifying the scheduling order, in addition to demonstrating excusable neglect for having missed the deadline. See O'Banion v. Select Portfolio Servs., Inc., 2011 U.S. Dist. Lexis 133116, at * 13-15 (D. Idaho Nov. 16, 2011) (applying Rules 6 and 16 to motion for leave to file amended complaint that was filed after deadline to file such a motion had passed); Weil v. Carecore Nat'l, LLC, 2011 WL 1938196, at *2 (D. Colo. May 19, 2011) (observing that other courts "have

held that a party moving to amend a pleading after a scheduling order deadline has passed must support the motion by demonstrating both excusable neglect and good cause"); see also Yeoman v. Ikea U.S.A. West, Inc., 2013 U.S. Dist. Lexis 96270, at *11-14 (S.D. Cal. July 10, 2013) (applying Rules 6 and 16 to motion for leave to extend discovery deadlines after deadlines passed).

In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993), the United States Supreme Court established a four-part balancing test for determining whether there has been "excusable neglect." Although that case involved Federal Rule of Bankruptcy Procedure 9006(b)(1), the Court reviewed the various contexts in which the phrase appears in the Federal Rules of Civil Procedure and made clear that the test applies in all of those contexts. Id. at 395. The factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. Id. The Pioneer test requires a flexible approach whereby no one factor is more significant than any other. Id. at 395 n.14. The Court cautioned against "erecting a rigid barrier against late filings attributable in any degree to the movant's negligence." Id. at 395 n.14. The weighing of the Pioneer factors is left to the discretion of the court. Pincay v. Andrews, 389 F.3d 853, 860 (9th Cir. 2004).

The good cause standard primarily considers the party's diligence in seeking to modify a scheduling order. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). The focus of the inquiry is on the moving party's reasons for seeking modification; "[i]f that party was not diligent, the inquiry should end." Id. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.

**II. Analysis**

Plaintiffs seek leave to amend their 4AC in order to modify the definition of the

California Class to include both union and non-union hourly employees for purposes of recovering unpaid "straight time."

While the parties did not apply the correct legal standards to Plaintiffs' Motion for Leave to File 5AC, the Court finds that the parties have provided sufficient information and argument for the Court to construe Plaintiffs' Motion for Leave to File 5AC as also requesting an extension of the deadline to seek leave to amend pleadings. Accordingly, the Court will apply the <u>Pioneer</u> factors to determine whether Plaintiffs' failure to abide by the scheduling order is a result of excusable neglect.

### A.   Danger of Prejudice to the Non-moving Party

Costco argues it would be unduly prejudiced by a late amendment because Costco would be forced to expend thousands of dollars to notify new class members, conduct an additional deposition, and produce more records. Costco contends the production of additional records would require an additional twelve to eighteen hours of work and that Costco would have to send notice to an additional 16,689 union employees.

Plaintiffs assert Costco has already sent out notice to some union employees and produced records for some union employees.  Plaintiffs argue leave to amend would prevent undue prejudice to themselves and promote judicial economy because failure to grant leave to amend would likely necessitate a second trial, which would involve major duplication of efforts by both parties.

The Court finds that, while Costco might suffer some inconvenience as a result of Plaintiffs' mistake, the inconvenience is slight in comparison to the possibility of another trial. <u>Beery v. Hitachi Home Elecs.</u>, 157 F.R.D. 481, 484-85 (C.D. Cal. 1994). Still, this factor requires the Court to consider the prejudice to the non-moving party—not the moving party.

The Court finds Costco would suffer some prejudice by Plaintiffs' untimely request for leave to amend in that Costco would be required to spend an additional twelve to eighteen hours producing additional documents, deposing at least one union

employee, and sending notice to over 16,000 new class members. This would, of course, require the Court to re-open discovery at this late stage in the proceedings. The Court thus finds that this factors weights against a finding of excusable neglect.

### B. Length of Delay and Potential Impact on Judicial Proceedings

Plaintiffs filed their Motion for Leave to File 5AC more than two years after the deadline to seek leave to amend pleadings passed, (see ECF No. 18), almost two years after they filed their 4AC, (see ECF No. 90), and three months after the close of discovery, (see ECF No. 142). This is a substantial delay. The impact of this delay is that the Court would be required to re-open limited discovery at a late stage in the proceedings. While this is not a significant impact on the judicial proceedings, the Court finds the length of delay weighs against a finding of excusable neglect.

### C. The Reason for Delay

Plaintiffs assert the reason for their delay is that they mistakenly removed all union members from the California Class in their attempt to defeat Costco's October 4, 2010 Motion for Summary Judgement with respect to California Labor Code § 514. Plaintiffs assert they realized their mistake on March 21, 2012, after receiving explanation codes to differentiate union from non-union employees in records produced by Costco. Plaintiffs state that they noticed Costco had sent notice to some union employees, along with the notice sent to non-union employees, which led Plaintiffs to realize they had mistakenly omitted all union employees from the California Class instead of just union employees seeking overtime compensation. Plaintiffs then filed the instant Motion for Leave to File 5AC more than five weeks after this discovery.

Costco argues Plaintiffs' Motion for Leave to File 5AC demonstrates undue delay by Plaintiffs because Plaintiffs have already amended their operative pleading four times, and the proposed amendment is not based on any new facts or discovery of new evidence. Costco asserts Plaintiffs knew union members were not included in the California Class definition during the period from January 3, 2011, to February 18,

2011, which is when the parties exchanged proposed Rule 23 class notices, reviewed one another's proposed notices, and agreed on an amended notice. (ECF Nos. 105-2; 109-3; 112-3.)

The Court finds that, even accepting Plaintiffs' representation that they mistakenly omitted union employees from the class definition, Plaintiffs had the information necessary to correct their mistake but failed to do so in a timely manner. Instead, Plaintiffs waited two years after making the mistake, three months after the close of discovery, and more than five weeks after they apparently discovered their mistake before attempting to rectify it by filing the instant Motion for Leave to File 5AC. Accordingly, this factor weighs against a finding of excusable neglect.

### D. Whether the Moving Party's Conduct Was in Good Faith

The final factor is whether Plaintiffs acted in good faith. The Court finds there is no evidence of bad faith by the Plaintiffs. This factor is therefore neutral.

Weighing the foregoing factors together, the Court finds Plaintiffs' failure to abide by the deadline to seek leave to amend its 4AC is not the result of excusable neglect. Accordingly, the Court must deny Plaintiffs' Motion for Leave to File 5AC.

### CONCLUSION & ORDER

Having considered the parties' submissions, the record in this matter, and the applicable law, and for the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File 5AC, (ECF No. 160), is **DENIED**. The hearing on Plaintiffs' Motion for Leave to File 5AC, currently set for September 27, 2013, is **VACATED**. Remaining on calendar is the hearing on Costco's Motion to Decertify.

DATED: September 26, 2013

HON. GONZALO P. CURIEL
United States District Judge